# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN TRAINAUSKAS, #Y-10061, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 18-CV-193-NJR |
| BARTON J. FRALICKER, C/O MCCARTHY, KENT E. BROOKMAN, CHAPLAIN KEIM, and JACQUELINE LASHBROOK, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Brian Trainauskas, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Stateville Correctional Center, recently filed this action pursuant to 42 U.S.C. § 1983. Plaintiff is the founder of The Guardians of Othala Kindred, a religious organization devoted to the practice of Asatru or Odinism.

In 2017, when Plaintiff was housed at Menard Correctional Center ("Menard"), he mailed two letters that discussed matters pertaining to The Guardians. The letters resulted in disciplinary charges and sanctions, which were eventually expunged. Plaintiff contends that the disciplinary charges and related sanctions violated his constitutional rights. In connection with these claims, Plaintiff sues Barton J. Fralicker (Correctional Officer at Robinson Correctional Center and author of one of the disputed disciplinary tickets), C/O McCarthy (Intelligence Officer at Menard and author of one of the disputed disciplinary tickets), Kent E. Brookman (Chairperson of Adjustment Committee at Menard and individual who oversaw Plaintiff's disciplinary hearing),

1

Chaplain Keim (Regional Chaplain for IDOC at Menard), and Jacqueline Lashbrook (Warden at Menard).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff is a follower of the Asatru religion, also known as Odinism. (Doc. 1, p. 9). The IDOC recognizes Asatru as a religion, and its Chaplaincy Handbook of Religious Beliefs recognizes certain Asatru holidays as religious holidays. (Doc. 1, p. 10).

In 2013, Plaintiff formed an organization known as The Guardians of Othala Kindred ("The Guardians") and published a book on Asatru. (Doc. 1, pp. 9-10). The Guardians is "a religious organization that emulates the customs, ways, and prayers of the Old Norse Community." (Doc. 1, p. 9). The members "pray to the Gods of the Norse Pantheon and keep sacred several holy days." *Id.* According to the Complaint, The Guardians is a nationally recognized religious organization. (Doc. 1, p. 10). Plaintiff claims he has never attempted to recruit other inmates to join The Guardians; however, his fiancé and another member of The Guardians answer letters addressed to the organization inquiring about Asatru and/or The Guardians. *Id.*

On February 28, 2017, officials at Menard intercepted a letter Plaintiff attempted to mail out of the prison. (Doc. 1, p. 11). Officer McCarthy concluded the letter violated certain IDOC Rules and issued a disciplinary ticket. (Doc. 1-1, pp. 1-2). Plaintiff was charged with violating DR 205 (Security Threat Group), DR 309 (Business Venture), and DR 310 (Abuse of Privileges). The disciplinary ticket, in relevant part, provided as follows:

> An outgoing letter was discovered, authored by [Plaintiff] and being sent to The Guardians of Othala, Dan Moreschi, Law Speaker…[Plaintiff] is the founding member of Guardians of Othala and has recruited multiple offenders to join his organization. In the contents of the letter, [Plaintiff] is asking advice from recipient on how to charge dues and fees to the members of the Guardians of Othala.

(Doc. 1-1, p. 1). The following day, Plaintiff was placed in disciplinary segregation. (Doc. 1, p. 11).

On March 2, 2017, officials at Robinson Correctional Center ("Robinson") intercepted a letter Plaintiff mailed to an offender housed at Robinson. (Doc. 1, p. 11; Doc. 1-1, pp. 3-4).[1]

---

[1] It appears the letter was "flagged" for investigation by mailroom staff on February 24, 2017. (Doc. 1-1, p. 3). Fralicker reviewed the letter and issued the disciplinary ticket on March 2, 2017. *Id.*

Officer Fralicker concluded the letter violated certain IDOC Rules and issued a disciplinary ticket. *Id.* Once again, Plaintiff was charged with violating DR 205 (Security Threat Group), DR 309 (Business Venture), and DR 310 (Abuse of Privileges). (Doc. 1-1, p. 3). The letter was addressed to an inmate at Robinson, indicated it was from Guardians of Othala, and listed an address in Downers Grove, Illinois. *Id.* The author of the letter was identified as Facichu Ifreann. According to the disciplinary ticket, Facichu Ifreann is one of Plaintiff's known aliases, and Plaintiff admitted to authoring the letter. *Id.* The ticket also indicates Plaintiff previously admitted that he is actively running the Guardians through his common-law wife, using the same Downers Grove address. *Id.*

A disciplinary hearing was held on March 7, 2017. (Doc. 1, p. 11; Doc. 1-1, pp. 5-6). Although not entirely clear, it appears the disciplinary hearing addressed both disciplinary tickets.[2] According to the Adjustment Committee report, Plaintiff did not request any witnesses, pleaded not guilty, and provided a written statement. (Doc. 1-1, p. 5). But Plaintiff claims that he asked to call a witness on his behalf and attempted to present exculpatory evidence. (Doc. 1, p. 11).

The Adjustment Committee, which was comprised of Brookman and Jason Hart (not a defendant in this action), found Plaintiff guilty on all charges. (Doc. 1-1, p. 5). The Adjustment Committee sanctioned Plaintiff with placement in segregation for one year, demotion to "C" grade for one year, commissary restriction for one year, and contact visit restriction for six months. *Id.* Plaintiff notes that, during the hearing, Brookman told Plaintiff that the IDOC did not recognize Asatru as a religion and indicated he would talk to Chaplain Keim about the

---

[2] The Adjustment Committee Report references the March 2 disciplinary ticket issued by Officer Fralicker. (Doc. 1-1, p. 5). But the Adjustment Committee's decision describes the conduct at issue in the February 28 disciplinary ticket issued by Officer McCarthy. *Id.*

4

matter. (Doc. 1, p. 12).

Plaintiff filed grievances, which were denied at the institutional level. (Doc. 1, p. 12). Plaintiff also asked Lashbrook to reconsider his sentence. *Id.* Lashbrook denied the request. *Id.* Plaintiff then appealed to the Administrative Review Board. *Id.* While his appeal was pending, Plaintiff received letters from Chaplain Keim and Warden Lashbrook acknowledging that the IDOC recognized Asatru as a religion, discussing which Asatru religious relics could be worn, and discussing requests for an Asatru religious diet. (Doc. 1, pp. 12-13; Doc. 1-1, pp. 7-8). Additionally, on March 30, 2017, Plaintiff's copy of the magazine "Vor Tru," an Asatru publication, was confiscated by unspecified mailroom staff. (Doc. 1, p. 13).

On July 3, 2017, Plaintiff received a letter from the Administrative Review Board. (Doc. 1, p. 14; Doc. 1-1, p. 10). The Administrative Review Board found that Plaintiff's procedural due process rights had been violated (finding the disciplinary process failed to comply with DR 504.30 and DR 504.80) and recommended that the disciplinary report be expunged. (Doc. 1-1, p. 10). John Baldwin, IDOC's Acting Director, concurred. *Id.* Plaintiff was released from disciplinary segregation on July 11, 2017–after spending approximately four months and eleven days in disciplinary segregation. *Id.*

Plaintiff contends that the conditions he endured while in disciplinary segregation amounted to cruel and unusual punishment. (Doc. 1, pp. 15-16). With respect to the problematic conditions, Plaintiff describes cells that are smaller than cells in the general population. (Doc. 1, p. 11). He also claims the cells are "equipped with a box car type door which lets in very little air or outside light." *Id.* Plaintiff also alleges that, due to unspecified conditions, he (1) lost over twenty pounds in less than four months; (2) developed severe back pain; (3) developed schizoaffective disorder; and (4) is now classified as seriously mentally ill. (Doc. 1, pp. 13-14).

Finally, Plaintiff claims that, on October 9, 2017, he was placed in disciplinary segregation "under investigation" by McCarthy without "cause or reason." (Doc. 1, p. 15). Exhibits attached to the Complaint reveal that Plaintiff was in administrative (and not disciplinary) segregation, on investigative status. (Doc. 1-1, p. 13).

<u>DISMISSAL OF CERTAIN DEFENDANTS AND CLAIMS</u>

**Chaplain Keim**

Plaintiff has named Keim, Menard's Chaplain, as a defendant. The Court notes, however, that the Complaint does not include any allegations establishing that Keim was personally involved in the underlying constitutional violations. Keim is only referenced in connection with a letter he sent to Plaintiff, acknowledging that Asatru is a recognized religion pursuant to IDOC regulations. Accordingly, Keim shall be dismissed from the action without prejudice for failure to state a claim upon which relief may be granted.

**Warden Lashbrook**

As discussed below, Plaintiff also has failed to allege that Lashbrook was personally involved in any of the alleged constitutional violations. As such, all claims against Lashbrook, in her individual capacity, shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Official Capacity Claims**

With the exception of Lashbrook (addressed below), Plaintiff may not sue any of the defendants in his or her official capacity. Individuals are not "persons" in their official capacities under Section 1983. Plaintiff can only bring claims against individuals who were personally involved in the deprivation of which he complains. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, to the extent that Plaintiff has attempted to bring claims against

Fralicker, McCarthy, and Brookman, in their official capacities, those claims shall be dismissed.

### **DIVISION OF COUNTS**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Brookman for punishing Plaintiff with segregation following his March 7, 2017 disciplinary hearing.

**Count 2:** Claim for violating the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc-1(a)) against Fralicker, Brookman, McCarthy, and Lashbrook, based on the disciplinary tickets Plaintiff received on February 28, 2017 and March 2, 2017 and associated sanctions.

**Count 3:** Claim against Fralicker and McCarthy for writing an "erroneous" disciplinary report.

**Count 4:** Eighth Amendment claim against all defendants in connection with the conditions Plaintiff endured while in disciplinary segregation.

**Count 5:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against McCarthy for placing Plaintiff in administrative segregation, without reason or explanation, on October 9, 2017.

**Count 6:** First Amendment religious freedom claim against unspecified mailroom staff for confiscating Plaintiff's Asatru magazine on March 30, 2017.

## **MERITS REVIEW UNDER § 1915(A)**

**Count 1**

*Preliminary Matter–Expungement of Disciplinary Action*

In this case, the subject disciplinary action was expunged by the Administrative Review Board after Plaintiff served a little over four months in disciplinary segregation. The Seventh Circuit has held that there is "no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995). This is because "[t]he administrative appeal process is part of the due process afforded prisoners." *Id.* In dicta, however, the Seventh Circuit suggested that this rule may only apply when the administrative appeal corrects the "procedural error *before* the punishment has begun." *Id.* at n. 4 (7th Cir.1994) (citing *Walker v. Bates*, 23 F.3d 652, 657-59 (2d Cir. 1994), *cert. denied*, 515 U.S. 1157 (1995) (emphasis added)). The Seventh Circuit went on to discuss the reasoning in *Walker*:

> The court in *Walker* concluded that if the prisoner has begun his punishment before the defect is cured on appeal, the prison board is answerable in damages absent a successful qualified immunity defense. Once the cause of action accrues, nothing the state subsequently does can cut off the Section 1983 action. The court emphasized that prisoner Walker would not have been placed in segregation but for the invalid decision. The driving force behind this conclusion, however, was the deprivation of a liberty interest for which compensation must be made.

*Id.* (internal citations omitted). Ultimately, the Seventh Circuit concluded that the rule announced in *Walker* did not apply because, unlike Walker, Morissette did not sustain an "undeserved deprivation." *Id.*

The deprivation at issue here appears to be similar to the deprivation at issue in *Walker*.[3] Although dicta, the Seventh Circuit's discussion of *Walker* suggests that the Court of Appeals might apply the same reasoning to this case. Accordingly, the Court will not, at this early stage in the litigation, dismiss Plaintiff's due process claim on the ground that the subject disciplinary action was subsequently expunged during the administrative review process.

*Analysis*

When a plaintiff brings an action under Section 1983 for procedural due process violations, he must show the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Therefore, evaluation of Plaintiff's due process claim involves a two-part inquiry. First, the Court considers whether a constitutionally protected interest was at stake. If it was, the Court must examine whether the disciplinary proceeding was conducted in accordance with procedural due process requirements.

---

[3] In *Walker*, a prisoner began serving a 120–day term in solitary confinement following a disciplinary hearing at which the prisoner's requests to call witnesses were denied. *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir. 1994). Although the prisoner's sentence was overturned on appeal, the prisoner was released after serving approximately 85 days in solitary confinement. *Id*. at 654 & 656. The Second Circuit Court of Appeals found that the administrative appeal did not cure the inmate's due process violation because the inmate's confinement had begun and was based solely upon the disciplinary sentence unlawfully imposed at his hearing. *Id*. at 657–59. These facts appear to be similar to the scenario at issue here. It is also worth noting that *Walker* was decided in accordance with pre-*Sandin* case law, meaning the Second Circuit assumed that 85 days in solitary confinement–standing alone–constituted a protected liberty interest. Had *Walker* been decided after *Sandin*, the case might have turned out differently. In this case, further development of the record will be necessary to assess whether the conditions Plaintiff experienced during his relatively short time in segregation are enough to establish that he was deprived of a constitutionally protected interest. All that being said, the fact that *Walker* was decided before *Sandin* does not seem to alter the rule the Court is concerned with here –whether expunging a sanction *after* punishment has begun extinguishes a prisoner's claim for procedural due process violations associated with the expunged sanction.

As to the first inquiry, the Court focuses on Plaintiff's placement in disciplinary segregation.[4] The Seventh Circuit has held that "due process claims based on 'relatively short' terms of segregation implicate no protected liberty interest, while longer terms may implicate a liberty interest depending on the conditions of confinement. *Younger v. Hulick*, 482 F. App'x. 157, 159 (7th Cir. 2012) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009)). In this case, Plaintiff spent a little over four months in disciplinary segregation. Four months in segregation, standing alone, does not implicate a protected liberty interest. *Beamon v. Pollard,* No. 17-1269, 2018 WL 1001606, at *2 (7th Cir. Feb. 21, 2018) ("135 days in segregation-absent any atypical conditions related to confinement-does not violate the Fourteenth Amendment."). But this period of time is just long enough to trigger an inquiry into the conditions of Plaintiff's confinement. *See Younger*, 482 F. App'x. at 159 ("At 90 days, Plaintiff's segregation falls just beyond those terms that we have held do not require inquiry into conditions.").

With regard to the conditions of Plaintiff's confinement,[5] the Complaint includes only two specific allegations. First, Plaintiff claims the "cells are much smaller than general population cells." (Doc. 1, p. 11). Second, he alleges the cells are "equipped with a box car type door which lets in very little air or outside light." *Id.* Standing alone, these conditions are likely

---

[4] Punishments such as demotion in grade, commissary restriction, or transfer to another facility do not amount to a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (prisoners do not have a protectable liberty interest in demotion to C-grade and loss of commissary privileges); *Id.* at 760 (prisoner has no liberty interest in remaining in general population or avoiding transfer to another prison).

[5] In assessing whether Plaintiff's disciplinary segregation amounts to a constitutional deprivation, the Court must determine if the segregation conditions amounted to an "atypical and significant hardship...in relation to the ordinary course of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, the "key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

not sufficient to create a liberty interest. Plaintiff also alleges, however, that conditions in disciplinary segregation were so bad he (1) lost more than twenty pounds in less than four months; (2) developed severe low back pain; (3) developed schizoaffective disorder; and (4) is now classified as seriously mentally ill. (Doc. 1, pp. 13-14).

Considering these allegations, together with the length of the deprivation at issue (approximately four months and eleven days), the Court cannot conclude that the subject disciplinary action did *not* involve a protected liberty interest–at least at this early stage. Accordingly, dismissal under § 1915A on this ground would be inappropriate at this time. *See Henderson v. Frank*, 293 F. App'x 410, 413 (7th Cir. 2008) (dismissal under 1915A, finding ninety days in disciplinary segregation did not impose an atypical and significant hardship, was premature where allegations pertaining to conditions of confinement were inconclusive, and prisoner had not pled himself out of court; case remanded for further factual development).

This brings the Court to the second inquiry: Whether the disciplinary proceeding was conducted in accordance with procedural due process requirements. Procedural due process in the prison context requires compliance with the protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Specifically, an inmate is entitled to (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *Wolff*, 418 U.S. at 563-69. In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Plaintiff alleges that his discipline was ultimately expunged because of a due process violation. Exhibits submitted by Plaintiff show that the ticket was in fact expunged and that the

Administrative Review Board did so because it found the process ran afoul of IDOC Rules 504.80 (addressing disciplinary hearing procedures) and 504.30 (addressing the preparation of disciplinary reports and notice). The protections in these regulations may be broader than those outlined in *Wolff*, but the fact that the Administrative Review Board found a due process violation that may have violated *Wolff* is sufficient, at the pleading stage, to render Plaintiff's claim plausible. Additionally, Plaintiff claims that he sought to have a witness testify on his behalf. But the hearing report indicates that no witnesses were called. This too suggests a possible due process violation.

Accordingly, Count 1 shall receive further review as to Brookman, the only defendant Plaintiff alleges was personally involved in his hearing and associated sanction.

**Count 2**

The First Amendment's Free Exercise Clause prohibits prison officials from imposing a substantial burden on the free exercise of religion, unless the burden is reasonably related to a legitimate penological interest. *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these concerns are raised as justifications by prison officials for actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional: (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to

[penological] concerns." *Id*. (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)). *See also Turner v. Safley*, 482 U.S. 78 (1987).

Plaintiff asserts that Fralicker, McCarthy, and Brookman interfered with his right to freely exercise his religion. His claim is premised on the February 28, 2017 and March 1, 2017 disciplinary tickets, as well as the related sanctions. At this early stage, the Court cannot determine whether the disciplinary tickets and associated punishment substantially burdened Plaintiff from freely exercising his religion and, if they did, whether the defendants' conduct furthered a legitimate penological interest. Accordingly, Plaintiff has articulated a claim based on his First Amendment right to freely exercise his religion as to Fralicker, McCarthy, and Brookman–the defendants who were allegedly personally involved in the constitutional deprivation. The Complaint does not suggest that Lashbrook was personally involved in issuing the disputed tickets or sanctions; accordingly, Plaintiff has not stated a viable First Amendment claim as to Lashbrook in her individual capacity.

Turning to the RLUIPA claim in Count 2, this statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Notably, RLUIPA limits damages to injunctive or declaratory relief. *See Sossamon v. Texas*, 563 U.S. 277, 287 (2011). Thus, Plaintiff may pursue his RLUIPA claim against an appropriate official capacity defendant only to the extent that he is seeking injunctive or

declaratory relief.[6] To the extent that Plaintiff is seeking injunctive relief, that claim may be moot; Plaintiff has been transferred to Stateville Correctional Center, and whether he is challenging a system-wide policy is unclear. *See Maddox v. Love,* 655 F.3d 709, 716 (7th Cir.2011) (transfer may moot a claim for injunctive relief if the transfer means inmate is no longer subject to the challenged policy); *West v. Grams,* 607 F. App'x 561, 566 (7th Cir. 2015) (despite transfer, prisoner's RLUIPA claim was not moot because prisoner was challenging system-wide policy and because prison failed to indicate that they had no intention of returning Plaintiff to original prison). Nonetheless, the Court will allow Plaintiff's RLUIPA claim to proceed against Lashbrook, in her official capacity as Menard's Warden. Lashbrook shall remain an official capacity defendant with respect to Plaintiff's RLUIPA claim unless and until the claim is found to be moot (or otherwise discharged) or, if the claim is not moot, until a more appropriate official capacity defendant is identified.

**Count 3**

Plaintiff claims that Fralicker and McCarthy violated his rights by filing "erroneous" disciplinary tickets. (Doc. 1, p. 16). The Complaint does not suggest that Fralicker or McCarthy falsified the disciplinary tickets or otherwise issued an unsubstantiated ticket. Instead, Plaintiff seems to be disputing whether charges contained in the disciplinary tickets were correct. Both disciplinary tickets suggest that The Guardians is a Security Threat Group. The February 28 disciplinary ticket also indicates that Plaintiff has a history of pressuring offenders to join The Guardians. Plaintiff disputes these claims. According to Plaintiff, The Guardians is a nationally

---

[6] The only injunctive relief mentioned in the Complaint involves a request asking the Court to enjoin Defendants from retaliating against him. (Doc. 1, p. 18). This is not grounds for dismissing Plaintiff's claim. *See* FED. R. CIV. P. 54(c) (prevailing party should receive any relief to which it is entitled, "even if the party has not demanded that relief in its pleadings"). *See also Jones v. Butler,* 663 F. App'x. 468, 470 (7th Cir. 2016) (incomplete demand for relief does not warrant dismissal or claim).

14

recognized religious organization, and he has never attempted to recruit other offenders to join the Guardians. (Doc. 1, pp 10-11). "But whether particular disciplinary charges are correct is a subject to be resolved by prison disciplinary boards, not by damages actions under § 1983." *Karow v. Fuchs*, 695 F. App'x 966, 967 (7th Cir. 2017). Accordingly, Count 3 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 4**

The Court finds that Plaintiff has not adequately pleaded an independent claim for conditions of confinement because he has not alleged that any of the named defendants were personally involved with respect to his conditions of confinement while in disciplinary segregation. Specifically, he has not alleged that he complained to any of the defendants about any conditions or that they were otherwise aware of the conditions and failed to act. Plaintiff claims that Lashbrook is subject to liability because she "maintain[ed] an environment in disciplinary segregation that must be considered cruel and unusual." (Doc. 1, p. 16). But an official cannot be held liable in a civil rights action merely because he or she supervised the person who violated a prisoner's constitutional rights—the doctrine of *respondeat superior* (supervisory liability) is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Section 1983 creates a cause of action based on personal liability and predicated upon fault. As such, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). Accordingly, Count 4 will be dismissed without prejudice for failure to plead personal involvement by any of the named defendants.

**Count 5**

Plaintiff claims that on October 9, 2017, McCarthy placed him in disciplinary segregation without cause or explanation. (Doc. 1, p. 15). Exhibits attached to the Complaint reveal, however, that on this date, Plaintiff was placed in administrative segregation for investigative purposes. (Doc. 1-1, p. 13). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs,* 522 F.3d 765 (7th Cir. 2008). This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Id.* at 771. Accordingly, Count 5 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 6**

Plaintiff claims that on March 30, 2017, unidentified mailroom staff confiscated his copy of "Vor Tru," an Asatru publication. (Doc. 1, p. 13). Plaintiff claims that this violated his First Amendment right to freely practice his religion. Even assuming that is true, this claim must be dismissed because it is not associated with any of the named defendants. Instead, it is directed at unidentified staff. For reasons already discussed, this is insufficient. As such, Count 6 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**PENDING MOTIONS**

Plaintiff also has filed a Motion for Recruitment of Counsel (Doc. 2). The Motion shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

## DISPOSITION

IT IS HEREBY ORDERED that **COUNT 1** shall proceed against **BROOKMAN** in his individual capacity.

IT IS FURTHER ORDERED that **COUNT 2** shall proceed against **FRALICKER, BROOKMAN,** and **MCCARTHY** in their individual capacities. **COUNT 2** shall proceed against **LASHBROOK,** in her official capacity only, in connection with the RLUIPA claim that is included in **COUNT 2.**

IT IS FURTHER ORDERED that **COUNTS 3, 4, 5,** and **6** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that **KEIM** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. The Clerk of the Court is **DIRECTED** to terminate this individual as a party in the Case Management/Electronic Case Filing ("CM/ECF") system.

With respect to **COUNTS 1** and **2,** the Clerk of the Court shall prepare for Defendants **BROOKMAN** (individual capacity only), **FRALICKER** (individual capacity only), **MCCARTHY** (individual capacity only), and **LASHBROOK** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 2). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, he and his attorney (if one is later appointed) were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: March 7, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**