IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN TRAINAUSKAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-193-NJR-DGW |
| | ) |
| BARTON J. FRALICKER, | ) |
| C/O MCCARTHY, KENT BROOKMAN, | ) |
| and JACQUELINE LASHBROOK, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 22) on the Motion for Leave to File Amended Complaint filed by Plaintiff Brian Trainauskas (Doc. 15). The Report and Recommendation, entered on July 6, 2018, recommends the Court deny Trainauskas's motion. Trainauskas filed a timely objection on June 27, 2018 (Doc. 25). For the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendation.

## BACKGROUND

Trainauskas, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pontiac Correctional Center, initiated this civil rights lawsuit pursuant to 42 U.S.C. § 1983 on February 8, 2018 (Doc. 1). Trainauskas is the founder of The Guardians of Othala Kindred, a religious organization devoted to the practice of Asatru or Odinism, and the author of a book on Asatru (*Id.*, p. 9-10). In February 2017,

officials at Menard Correctional Center intercepted a letter Trainauskas wrote to an individual outside the prison indicating he had recruited offenders to join the Guardians of Othala. The letter also asked for advice on how to charge those members dues and fees (Doc. 1-1, p. 1). Trainauskas was charged with violating various IDOC rules and was issued a disciplinary ticket. On March 2, 2017, officials at Robinson Correctional Center intercepted a letter Trainauskas mailed to an offender housed at that institution. He again was charged with violating the same rules and was issued a disciplinary ticket (Doc. 1-1, p. 3).

After a disciplinary hearing was held, Trainauskas was found guilty and sanctioned with placement in disciplinary segregation, among other things (Doc. 1, p. 11; Doc. 1-1, pp. 5-6). Trainauskas appealed his sentence to the Administrative Review Board, which eventually found Trainauskas's procedural due process rights had been violated because the disciplinary process had failed to comply with IDOC regulations (Doc. 1, p. 12). As a result, his disciplinary report was expunged, and Trainauskas was released from disciplinary segregation after serving approximately four months and eleven days of his sentence (Doc. 1-1, p. 10).

The Complaint addresses various constitutional violations Trainauskas believes occurred in connection with these and subsequent events. Following a threshold review of the Complaint pursuant to 28 U.S.C. 1915A, Trainauskas was allowed to proceed on the following claims:

**Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Brookman for punishing Plaintiff with segregation following his March 7, 2017 disciplinary hearing.

> **Count 2:** Claim for violating the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc-1(a)) against Fralicker, Brookman, McCarthy, and Lashbrook, based on the disciplinary tickets Plaintiff received on February 28, 2017 and March 2, 2017 and associated sanctions.

The following claims were dismissed without prejudice:

> **Count 3:** Claim against Fralicker and McCarthy for writing an "erroneous" disciplinary report.
>
> **Count 4:** Eighth Amendment claim against all defendants in connection with the conditions Plaintiff endured while in disciplinary segregation.
>
> **Count 5:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against McCarthy for placing Plaintiff in administrative segregation, without reason or explanation, on October 9, 2017.
>
> **Count 6:** First Amendment religious freedom claim against unspecified mailroom staff for confiscating Plaintiff's Asatru magazine on March 30, 2017.

(Doc. 5.) Additionally, Defendant Chaplain Keim was dismissed without prejudice because the Complaint did not include any allegations establishing that Keim was personally involved in the underlying constitutional violations (*Id.*). Likewise, all claims against Warden Lashbrook in her individual capacity were dismissed without prejudice because Trainauskas did not allege that she was personally involved in any of the alleged constitutional violations (*Id.*).

On March 14, 2018, Trainauskas filed a motion for leave to amend the Complaint (Doc. 9), but that motion was summarily denied without prejudice by Magistrate Judge Wilkerson because the proposed amended complaint did not include all claims

remaining before the Court (Doc. 13). On May 2, 2018, Trainauskas filed a renewed motion for leave to file an Amended Complaint (Doc. 15). Magistrate Judge Wilkerson reviewed the proposed Amended Complaint pursuant to 28 U.S.C. § 1915A and recommended finding that Trainauskas had not alleged any new facts supporting additional claims for relief.

Specifically, Magistrate Judge Wilkerson found that the only new allegation as to Defendant Keim was that Keim "provided input on Plaintiff's charge and his sentencing." On its face, however, this statement on its own is insufficient to allege a due process violation.

Next, Magistrate Judge Wilkerson found that while Trainauskas alleged additional facts about the conditions of his confinement, he alleged no facts indicating Defendants were personally aware of those conditions. And his conclusory statement that Warden Lashbrook knew of these conditions because she received grievances about the conditions—from other inmates at unspecified times—does not suggest she had personal knowledge about the specific conditions of Trainauskas's confinement. Rather, Trainauskas was simply attempting yet again to assert *respondeat superior* liability.

Magistrate Judge Wilkerson also found Trainauskas's claim that Defendants Fralicker and McCarthy violated his due process rights by filing an "unsubstantiated" disciplinary ticket (his original Complaint called the ticket "erroneous") does not create a viable cause of action because whether a disciplinary charge is correct is a matter for the prison and is not actionable under Section 1983. The fact that the ticket was

ultimately found unsubstantiated does not necessarily mean a constitutional violation occurred.

Finally, Magistrate Judge Wilkerson found Trainauskas's due process claim related to his time in administrative segregation lacking when his sole complaint was that he was not interviewed within ten days of being placed on investigative status, as required by IDOC regulations. Magistrate Judge Wilkerson concluded this allegation does not implicate a liberty interest; thus, Trainauskas had not stated a claim upon which relief could be granted. Trainauskas timely objected to the Report and Recommendation on June 27, 2018 (Doc. 25).

## DISCUSSION

Where timely objections are filed, this Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557.

A motion for leave to amend a pleading is evaluated under Rule 15(a)(2), which provides that courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Seventh Circuit "has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977).

**A.     Conditions of Confinement**

Trainauskas first objects to Magistrate Judge Wilkerson's conclusion that Warden Lashbrook had no personal knowledge of his allegedly unconstitutional conditions of confinement when Trainauskas only summarily alleged that she received numerous grievances about the conditions. Magistrate Judge Wilkerson noted there is no evidence Trainauskas filed any grievances himself, and the allegation that Warden Lashbrook received grievances from other inmates at unspecified periods of time does not suggest she had personal knowledge of the specific conditions of Trainauskas's confinement. In his objection, Trainauskas states that during his time in segregation at least one inmate died from heat exhaustion and, upon information and belief, the Warden was informed of that situation—therefore making her responsible for the unconstitutional conditions of confinement (*Id.*).

The Eighth Amendment can be violated by conditions of confinement in prison when (1) there is a deprivation that is, from an objective standpoint, so sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The Seventh Circuit has identified several situations that meet this

demanding test, including extreme temperatures, lack of clothing, or inadequate sanitation. *Gillis v. Litscher*, 468 F.3d 488, 493-94 (7th Cir. 2006). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Id.* at 493. An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem. *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

As to the objective element, courts have found that extreme temperatures inside prisons can violate the Eighth Amendment. *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) ("[I]t is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment."); *White v. Monohan*, 326 F. App'x 385, 387 (7th Cir. 2009) (holding prisoner sufficiently stated conditions of confinement claim based on temperatures over 100 degrees and a lack of ventilation).

Here, Trainauskas alleges in his proposed amended complaint that cells in disciplinary segregation, where he spent more than four months, are much smaller than those in general population and are double occupancy. They also have a boxcar-style, thick door that lets in very little light or fresh air. Trainauskas claims he was confined to his cell except for two recreation periods and medical passes, he was not allowed contact visits with his family, he had no access to his television, and he was denied access to the commissary, law library, and chapel. He also claims the temperature inside the cells exceeded 100 degrees during the summer months. As a result, Trainauskas claims he lost more than twenty pounds, incurred severe lower back pain, and developed

schizo-affective disorder and is now classified as seriously mentally ill. The Court finds these allegations sufficient to meet the objective element of a conditions of confinement claim.

Trainauskas also must allege, however, that prison officials were deliberately indifferent to those conditions. In order to be held liable under Section 1983, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted.) This means "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[I]n determining whether prison officials had knowledge of the potential harm, [courts] consider whether 'the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . ." *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001) (quoting *Farmer* 511 U.S. at 842).

Here, Trainauskas generally alleges in his Amended Complaint that Defendant Lashbrook received grievances about the conditions, that she was aware of the conditions, and that she did nothing to address them. While Magistrate Judge Wilkerson noted that Trainauskas did not identify who sent the grievances, when they were filed, or how he is aware Defendant Lashbrook received them, at this juncture, the Court must liberally construe all factual allegations. *See Rodriguez v. Plymouth Ambulance Serv.*, 577

F.3d 816, 821 (7th Cir. 2009). Trainauskas's allegations that Defendant Lashbrook was made aware of the conditions and did nothing to address them is sufficient at this point to satisfy the subjective element of an Eighth Amendment conditions of confinement claim. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2012) (holding that a conditions of confinement claim generally requires a factual development of the record); *Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001) (noting that the warden is the proper defendant to answer for conditions of confinement claims).

**B.   Due Process**

With regard to Trainauskas's Fourteenth Amendment claim for deprivation of a liberty interest without due process of law when he was placed in administrative segregation, Trainauskas disagrees that no liberty interest was at stake implicating due process concerns. Trainauskas relies on the Constitution's mandate that no man or woman shall be deprived of their liberty without due process of law (*Id.*).

The United States Supreme Court has held, however, that the Constitution itself does not create a liberty interest in avoiding transfer *within* a correctional facility to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Seventh Circuit has specifically held that inmates have no liberty interest in avoiding transfer to administrative segregation. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Crowder v. True*, 74 F.3d 812, 815 (7th Cir.1996) (holding that placement of inmate in non-disciplinary segregation for three months did not create liberty interest). "Indeed, there is nothing 'atypical' about discretionary segregation; discretionary segregation is instead an 'ordinary incident of prison life' that inmates should expect to experience

during their time in prison." *Id.* Because being placed in administrative segregation is "too trivial" of a deprivation "of a convicted prisoner's liberty to trigger the duty of due process," Trainauskas has failed to state a Fourteenth Amendment due process claim with regard to his time in administrative segregation, and his objection with regard to this claim is overruled.

**C.     "Unsubstantiated" Disciplinary Tickets**

Trainauskas next argues the Administrative Review Board ruled that his due process rights were violated and that Defendants McCarthy and Fralicker wrote tickets that did not substantiate the charges against him, therefore they are accountable (along with Defendants Brookman and Lashbrook) for depriving him of liberty, freedom, and due process.[1]

Typically, a false disciplinary report on its own does not constitute a violation of a prisoner's due process rights. *Garcia v. Spiller*, No. 16-CV-1345-DRH, 2017 WL 773595, at *4 (S.D. Ill. Feb. 27, 2017) (citing *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir. 1984)). The Seventh Circuit Court of Appeals has held that allegations of false disciplinary reports do not state a claim where due process in the form of a hearing is afforded. *See Hanrahan*, 747 F.2d at 1140. Indeed, a hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for filing an allegedly false disciplinary report. *Hawkins v. O'Leary,* 729 F. Supp. 600, 602 (N.D. Ill. 1990).

Here, however, Trainauskas's disciplinary tickets written by Defendants Fralicker and McCarthy were expunged because the Administrative Review Board determined

---

[1] As noted in this Court's threshold order, the Adjustment Committee Report only references the March 2 disciplinary ticket issued by Officer Fralicker, but also describes the conduct at issue in the February 28 disciplinary ticket issued by Officer McCarthy (Doc. 1-1, p. 5).

due process was *not* afforded to Trainauskas. Trainauskas also has alleged that he sought to have a witness testify on his behalf at his hearing, yet no witnesses were called.

As this District Court noted in *Jacobo v. Holder*, the Seventh Circuit has never definitively resolved whether an inmate may bring a due process claim against an officer for issuing a false report. *Jacobo v. Holder*, No. 15-CV-0703-MJR-SCW, 2016 WL 5341197, at *5 (S.D. Ill. Sept. 23, 2016). It has, however, "hinted that that where an inmate is *not* afforded due process subsequent to the issuance of a fraudulent disciplinary report, the inmate likely has a cause of action against those who issued the fraudulent report, too." *Id.* Because the Court has already found Trainauskas has stated a claim for a violation of his due process rights related to his disciplinary hearing, the Court finds the facts alleged in Trainauskas's Amended Complaint sufficient to maintain a claim against Defendants McCarthy and Fralicker for violating his due process rights when they wrote unsubstantiated disciplinary tickets.

**D.     Chaplain Keim**

Trainauskas next claims Chaplain Keim is a valid defendant because Defendant Brookman stated he would be consulting with Chaplain Keim about Trainauskas's discipline, thereby making him responsible for depriving Trainauskas of his freedom (*Id.*). In his proposed Amended Complaint, Trainauskas alleges that during his brief disciplinary hearing, Defendant Brookman told him that IDOC does not recognize Asatru or Odinism as a religion and that he would need to speak with Chaplain Keim on this matter. Thus, because Chaplain Keim provided input on Trainauskas's charge and his sentencing, he must be held accountable as a defendant in this matter.

The Court agrees with Magistrate Judge Wilkerson that Trainauskas simply has not pleaded enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. Trainauskas has not alleged that Keim wrote the disciplinary ticket, participated in the related hearing, or was responsible for the disciplinary findings. Accordingly, Trainauskas's objection with regard to this claim is overruled.

E.   **Other Allegations**

Finally, Trainauskas objects to the Report and Recommendation's finding that Jason Hart signed the disciplinary report, when Jason Hart was not even at Trainauskas's hearing, "nor were any minorities which is a clear violation of Plaintiff's due process." (*Id.*) A review of the record indicates Jason Hart did indeed serve on the Adjustment Committee and sign the Final Summary Report. To the extent Trainauskas is attempting to assert a new claim for a violation of his due process rights because of a lack of diversity at his hearing, an objection to a Report and Recommendation is not the proper avenue to bring such a claim. His objection as it pertains to this claim is overruled.

CONCLUSION

For the reasons stated above, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 22). Plaintiff Brian Trainauskas's Objection (Doc. 25) is **SUSTAINED in part and OVERRULED in part**, and his Motion for Leave to Amend the Complaint (Doc. 15) is **GRANTED in part and DENIED in part**.

The Clerk of Court is **DIRECTED** to file Trainauskas's proposed Amended Complaint as the First Amended Complaint. The Court notes that, although the entirety

The Court agrees with Magistrate Judge Wilkerson that Trainauskas simply has not pleaded enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. Trainauskas has not alleged that Keim wrote the disciplinary ticket, participated in the related hearing, or was responsible for the disciplinary findings. Accordingly, Trainauskas's objection with regard to this claim is overruled.

E.   **Other Allegations**

Finally, Trainauskas objects to the Report and Recommendation's finding that Jason Hart signed the disciplinary report, when Jason Hart was not even at Trainauskas's hearing, "nor were any minorities which is a clear violation of Plaintiff's due process." (*Id.*) A review of the record indicates Jason Hart did indeed serve on the Adjustment Committee and sign the Final Summary Report. To the extent Trainauskas is attempting to assert a new claim for a violation of his due process rights because of a lack of diversity at his hearing, an objection to a Report and Recommendation is not the proper avenue to bring such a claim. His objection as it pertains to this claim is overruled.

CONCLUSION

For the reasons stated above, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 22). Plaintiff Brian Trainauskas's Objection (Doc. 25) is **SUSTAINED in part and OVERRULED in part**, and his Motion for Leave to Amend the Complaint (Doc. 15) is **GRANTED in part and DENIED in part**.

The Clerk of Court is **DIRECTED** to file Trainauskas's proposed Amended Complaint as the First Amended Complaint. The Court notes that, although the entirety

of the proposed Amended Complaint will be filed, only the claims set forth below will proceed in this action:

> **Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Brookman for punishing Plaintiff with segregation following his March 7, 2017 disciplinary hearing.
>
> **Count 2:** Claim for violating the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc-1(a)) against Fralicker, Brookman, McCarthy, and Lashbrook, based on the disciplinary tickets Plaintiff received on February 28, 2017 and March 2, 2017 and associated sanctions.
>
> **Count 3:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Fralicker and McCarthy for writing an unsubstantiated disciplinary report.
>
> **Count 4:** Eighth Amendment conditions of confinement claim against Lashbrook for the conditions Plaintiff endured while in disciplinary segregation.

**IT IS SO ORDERED.**

**DATED:** September 5, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**